Filed 1/23/25  P. v. Edmund CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063578 |
| v. | (Super. Ct. No. INF064944) |
| NEIL AGUSTUS EDMUND, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Riverside County, John D. Molloy, Judge. Reversed and remanded with directions.

Appellate Defenders and Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A.

Sevidal, James M. Toohey and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

In 2013, a jury found Neil Agustus Edmund guilty of the first degree murder of Juan Pablo Munoz, among other offenses. The jury also found the murder was committed during an attempted robbery and Edmund personally and intentionally discharged a firearm, which proximately caused great bodily injury or death to a non-accomplice.

In this appeal, Edmund challenges the summary denial of his petition for resentencing under Penal Code section 1172.6.[1] As relevant here, that section permits a person "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to vacate the murder conviction and seek resentencing on any remaining counts. (§ 1172.6, subd. (a).) As we explain below, the record of conviction before us is very limited, and for that reason, we cannot determine that the record conclusively establishes Edmund was statutorily ineligible for resentencing relief. Specifically, the jury was instructed on the theory of felony murder. And when read together, the jury instructions and verdicts do not foreclose the possibility the jury found Edmund guilty on a theory of felony murder that is no longer valid. Accordingly, we reverse the order denying Edmund's petition for resentencing and remand with directions to the trial court to issue an order to show case and conduct an evidentiary hearing.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

FACTS[2]

In 2013, a jury convicted Edmund of the first degree murder of Juan Pablo Munoz (§ 187, subd. (a); count 1); attempted robbery of G.S. and of Munoz (§§ 664/211; counts 2–3, respectively); and being a felon in possession of a firearm (§ 12021, subd. (a)(1); count 4). On count 1, the jury found the murder was committed during the attempted robbery. (§ 190.2, subd. (a)(17)(a).) On counts 1 and 3, the jury found Edmund personally and intentionally discharged a firearm and proximately caused great bodily injury or death to another person, not an accomplice. (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8).) And on count 2, the jury found Edmund personally used a firearm during the commission of the offense. (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8).)

After the jury rejected the death penalty, Edmund admitted having suffered two prior strike convictions. On count 1, Edmund was sentenced to life in prison without the possibility of parole. Concurrent 25-year terms were imposed on counts 2 and 4, and a consecutive 25-year term was imposed on count 3 but stayed under section 654.

In *Edmund I*, this court modified the judgment to reduce certain fees and, as modified, affirmed the judgment.

In May 2023, Edmund filed a form petition for resentencing under section 1172.6 and requested counsel. Counsel was appointed for him. Other than the form petition, the record on appeal does not contain any other

---

[2] On our own motion, we take judicial notice of the jury instructions, the disposition table for the instructions, and the verdict forms, taken from the clerk's transcript in *People v. Edmund* (Oct. 15, 2015, G050700) [nonpub. opn.] (*Edmund I*). (Evid. Code, §§ 452, subd. (d), 459.)

briefing—filed either by the People or Edmund's appointed counsel—on the resentencing issue.

The colloquy at the December 2023 prima facie hearing was brief. After the trial court called the matter and counsel stated their appearances, the People made an "[o]ral motion" to deny the petition. We set forth the entire argument on the oral motion:

"[The prosecutor]: Your Honor, we sent counsel a copy of the jury instructions for this case on June the 12th of 2023. It was both the guilt and the penalty phase. There was no violative instructions contained therein. Nothing regarding natural and probable consequences, felony murder, conspiracy, implied malice murder, or any other theory by which malice could possibly be imputed to the defendant. We'd ask that the petition be denied.

"[Defense counsel]: I have confirmed everything that counsel said, and I'll submit.

"THE COURT: The petition is denied."

The appellate record does not contain a written statement of the trial court's reasons for denying the petition. And nothing in the record suggests the court, in denying the petition, received or reviewed the jury instructions or any other documents or filings.

Edmund timely appealed. His court-appointed counsel filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216. This court gave Edmund 30 days to file a supplemental brief on his own behalf. None was filed.

After reviewing the record, we ordered the parties to file supplemental briefing on (1) our intent to take judicial notice of portions of the clerk's transcript in *Edmund I*, specifically the jury instructions and disposition table and the verdict forms; and (2) whether the trial court erred

4

by denying the petition at the prima facie stage. (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*); *People v. Harden* (2022) 81 Cal.App.5th 45 (*Harden*); *People v. Vang* (2022) 82 Cal.App.5th 64.) The parties filed supplemental briefs and the People filed a responsive brief.

DISCUSSION

Effective January 1, 2019, sections 188 and 189 were amended to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959.) Section 1172.6 permits a person convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition for resentencing relief. (§ 1172.6, subd. (a)(1).)

"The petitioner has the burden of making a prima facie case for relief." (*People v. Ramos* (2024) 103 Cal.App.5th 460, 464.) If the petitioner makes a prima facie case, the trial court shall issue an order to show cause. (*Ibid.*) Although "[t]he prima facie stage bar is '"very low,"' [it is] not nonexistent." (*Ibid.*) So if the petitioner is ineligible for resentencing as a matter of law, the court can deny the petition at the prima facie stage. (*Lopez, supra,* 78 Cal.App.5th at p. 14.) "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or

5

(4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*Ibid.*) "We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*Ramos*, at p. 465.)

Lopez is instructive. In *Lopez*, a jury found defendant guilty of first degree murder and found true the special circumstance allegation that the murder was committed during a robbery. (*Lopez*, *supra*, 78 Cal.App.5th at p. 11.) The trial court instructed the jury on "murder under two theories: (1) malice aforethought and (2) felony murder." (*Id.* at p. 14.) To find the defendant guilty of felony murder, the jury was instructed under CALCRIM No. 540A that it "had to find he committed robbery and '[w]hile committing robbery, the defendant *caused the death of another person*.' (Italics added.)" (*Id.* at p. 16.) To find the robbery-murder special-circumstance allegation true, it was instructed under CALCRIM No. 730 that it "had to find defendant 'did an act that *caused the death of another person*.' (Italics added.)" (*Ibid.*) And regarding causation, it was instructed that "'[a]n act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act.'" (*Id.* at p. 16.) The jury received no instructions on aiding and abetting, liability by virtue of being a major participant in the underlying felony, or any other vicarious liability theories. (*Id.* at p. 15.)

Based on these instructions, the *Lopez* court concluded "it was possible for the jury to have found defendant guilty of felony murder, and found to be true the robbery-murder special-circumstance allegation, without finding defendant was the actual killer." (*Lopez*, *supra*, 78 Cal.App.5th at pp. 4–5.) The court held "the term 'actual killer' as used in the revised felony-murder rule of section 189, subdivision (e)(1) refers to someone who

6

personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death." (*Id.* at p. 4.) Under this meaning of "actual killer," the court reasoned that while the record of conviction established the defendant *proximately caused* the victim's death (i.e., committed an act that causes death), it did not necessarily establish he *personally killed* the victim (i.e., was the actual killer). (*Id.* at pp. 17–20.) "The jury was not instructed it had to find defendant personally killed the victim to convict him; the jury was instructed it only had to find defendant committed an act that caused the victim's death." (*Id.* at p. 20.) Thus, it was possible "the jury convicted defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer." (*Ibid.*) For this reason, the defendant met his burden of making a prima facie case for relief under section 1772.6. (*Id.* at p. 5.)

We agree with the rationale of *Lopez*. To determine whether the trial court properly denied Edmund's petition, we ask "whether it was *possible* for a juror to have (1) found [him] guilty of felony murder, and (2) found to be true the robbery . . . special circumstance[ ] allegation[ ], as well as the personal infliction of great bodily injury allegations, without also finding [he] personally killed the victim[.]" (*Harden*, *supra*, 81 Cal.App.5th at p. 54, citing *Lopez*, *supra*, 78 Cal.App.5th at p. 14.) Reviewing only the limited record before us—as we must—we conclude the answer is "yes."

The jury here received the same instructions as those given in *Lopez*. In this case, the jury was instructed that to find Edmund guilty of murder, the People had to prove, among other things, that "[t]he defendant committed an act that caused the death of another person," and it was further instructed "[a]n act causes death if the death is the direct, natural,

7

and probable consequence of the act and the death would not have happened without the act." (CALCRIM No. 520.)

Despite representations by the prosecutor and defense counsel at the prima facie hearing that the jury was not instructed on felony murder, our review of the jury instructions reveals otherwise. The jury was instructed on two theories for first degree murder: (1) "willful, deliberate, and premeditated" murder; and (2) felony murder during the commission of an attempted robbery. Under the theory of felony murder, the jury was instructed the People had to prove "1. The defendant attempted to commit a robbery; [¶] 2. The defendant intended to commit a robbery; [¶] AND [¶] 3. While attempting to commit a robbery the defendant *caused the death of another person*." (CALCRIM No. 540A, italics added.)

On the special circumstance allegation of murder during a robbery, the jury was instructed the People had to prove "1. The defendant attempted to commit a robbery; [¶] 2. The defendant intended to commit a robbery; [¶] 3. The defendant *did an act that caused the death of another person*; [¶] AND [¶] 4. The act causing the death and the attempted robbery were part of one continuous transaction." (CALCRIM No. 730, italics added.)

And on the allegation that Edmund intentionally discharged a firearm during the crime of first degree murder, the jury was instructed the People had to prove "1. The defendant personally discharged a firearm during the commission or attempted commission of that crime; [¶] AND 2. The defendant intended to discharge the firearm." (CALCRIM No. 3150.) The jury was further instructed that if the People proved both elements, the jury had to "decide whether the People also have proved that the defendant's act caused great bodily injury to or the death of a person." (*Ibid.*)

8

Although the jury found Edmund guilty of first degree murder, it did not indicate which theory it relied on: willful, deliberate, and premediated murder or felony murder. The instructions for felony murder left open the possibility that the jury found him guilty of causing the death without finding he was the actual killer. (*Lopez*, *supra*, 78 Cal.App.5th at pp. 4–5, 17–20.) Given this possibility, we cannot conclude as a matter of law—at least not at the prima facie stage and on this limited record—that Edmund was ineligible for resentencing relief under section 1172.6.

The People acknowledge the similar jury instructions used in this case and *Lopez* but argue *Lopez* is distinguishable because of the different disputed factual issues at trial in the cases. In *Lopez*, the appellate court relied on facts set forth in the prior unpublished opinion from the appeal of the underlying judgment. (*Lopez*, *supra*, 78 Cal.App.5th at p. 5.) The People urge us to do the same here with *Edmund I* and, from those facts, determine that the prosecution's sole theory at trial was that Edmund was the actual killer. We decline to do so. Section 1172.6 suggests courts may use prior opinions only to recite the procedural history of a case, and then only at the evidentiary stage. (See § 1172.6, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["court may also consider the procedural history of the case recited in any prior appellate opinion" at evidentiary hearing].)[3]

---

[3] We acknowledge the trial transcript is also "part of the record of conviction" (*People v. Lopez* (2023) 88 Cal.App.5th 566, 572, fn. 5) and the possibility it might have established Edmund's ineligibility at the prima facie stage. But because the People did not rely on the trial transcript as a basis for denial at the prima facie stage, neither do we.

## DISPOSITION

The postjudgment order denying the section 1172.6 petition for resentencing is reversed, and the matter is remanded for issuance of an order to show cause and an evidentiary hearing on Edmund's entitlement to resentencing for his conviction for first degree murder.

DELANEY, J.

WE CONCUR:

GOETHALS, ACTING P. J.

SANCHEZ, J.